E-FILED
Sunday, 29 November, 2015  09:48:21 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ARDESHIR LOHRASBI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 13-3105 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Board of Trustees of the University of Illinois's Renewed and Revised Motion for Summary Judgment (d/e 37), pursuant to Federal Rules of Civil Procedure Rule 56.  The MOTION is GRANTED because Plaintiff Ardeshir Lohrasbi's claim is time-barred and the doctrine of equitable tolling does not apply.

## I. BACKGROUND

On June 24, 2013, Plaintiff filed a Complaint in this Court against the Board of Trustees of the University of Illinois ("Defendant").  Plaintiff claims he suffered adverse employment

actions based on Defendant's decisions to serve him with a notice of trespass, to place him on administrative leave pending an evaluation of his fitness to work, and to deny him the status and benefits of Professor Emiritus.  These decisions, Plaintiff alleges, were discriminatory actions motivated by Plaintiff's race and national origin.

Plaintiff is a citizen of the United States who was born in Iran. Plaintiff suffers from essential tremors, a medical condition causing him to shake.  In 1980, he began working at the University of Illinois at Springfield and, in 1986, he was made a tenured professor.  Plaintiff's last position at the University of Illinois at Springfield was Associate Professor of Business Administration in the College of Business.  The Springfield campus is part of the University of Illinois system, 110 ILCS 327/40-5, which is governed by Defendant, the Board of Trustees of the University of Illinois, 110 ILCS 327/40-5.

In June of 2011, Plaintiff decided to retire and entered into a Resignation Agreement with Defendant, to be effective December 30, 2011.  Plaintiff voluntarily signed the agreement on June 16, 2011.  Defendant, through the Dean of the College of Business and

Management, Ron McNeil, signed the agreement on June 17, 2011. In consideration of Plaintiff's retirement, Defendant agreed to pay Plaintiff a one-time payment of $21,345, as well as compensation for other research and teaching commitments previously made by Plaintiff.  The Resignation Agreement contained an integration clause stating that "No amendment, modification or alteration of this Agreement shall be binding unless in writing, dated subsequent to the date hereof, and duly executed by both parties hereto."  Def. Renewed and Revised Mot. Summ. J. (d/e 37-23) at 11-12.

On June 27, 2011, Dean McNeil wrote a letter to Plaintiff advising him that McNeil would inform the Chair of the Department of Business Administration that McNeil was recommending Plaintiff for emeritus status and that McNeil would endorse a recommendation from the Department for such status.  Def. Renewed and Revised Mot. Summ. J. Exh. (d/e 37-23) at 16. Additionally, the letter advised Plaintiff that "[i]t is the College's plan and commitment" for Plaintiff to continue to teach three sections per year, an option for Professors Emeriti.  *Id.*  The letter was signed by both Dean McNeil and Plaintiff.

In August of 2011, Plaintiff communicated to Dean McNeil on at least two occasions that Plaintiff would like to delay his retirement or otherwise continue to teach in the spring because of impending financial issues concerning a potential recurrence of his wife's cancer. Dean McNeil notified Interim Provost Lynn Pardie of Plaintiff's wishes to delay retirement via memorandum on two occasions. Provost Pardie later informed Dean McNeil that the University could not grant Plaintiff's request because the University would not alter the resignation agreement and faculty members cannot be rehired within 60 days of retirement. It is unclear when Plaintiff was notified of the University's decision.

On November 14, 2011, Plaintiff was discussing the pending decision regarding his retirement with Dean McNeil's assistant, Patty Sanchez. At one point during the conversation, Ms. Sanchez heard Plaintiff use the phrase "maybe a machine gun," though she was unaware of the context of the comment. Plaintiff maintains he was referring to people using guns to commit suicide, as, earlier that day, he had attended a celebration of life for his friend and mentor Dennis Camp who had shot himself. Ms. Sanchez did not feel threatened or concerned by the comment or the conversation at

the time.  Over the following weekend, Ms. Sanchez determined she should report Plaintiff's comments.  Ms. Sanchez reported the comment to the University's Attorney Mark Henss.

As a result of Ms. Sanchez's reporting the comment, Chief of the University Police, Donald Mitchell initiated a report and assigned Officers Jerry Kuchar and Amanda Baughman to follow up.  During an interview with Plaintiff regarding the incident, Chief Mitchell asked Plaintiff three questions regarding the "machine gun" statement.  Chief Mitchell asked Plaintiff if Plaintiff made the utterance "maybe a machine gun?" and Plaintiff responded that he did not recall or that he did not know what the Chief was talking about.  It is not clear whether Chief Mitchell provided any context for the question, such as when or to whom Plaintiff allegedly made the utterance.  Chief Mitchell asked Plaintiff if he owned a gun, and Plaintiff responded that he did not and that his culture did not allow for the possession of a gun except in war.  Chief Mitchell asked Plaintiff if he felt like he wanted to hurt someone or himself, and Plaintiff responded that he did not and he would not kill himself because his wife had cancer and his family would be left with nothing.  According to Chief Mitchell, his officers asked several

Page 5 of 27

other questions, and Plaintiff told officers about the situation surrounding his retirement.  Def. Renewed and Revised Mot. Summ. J. Exh. (d/e 37-16) at 6-8.  Chief Mitchell stated that, during the interview, Plaintiff appeared to be nervous, trembling, and sweaty, that his voice went up and down, and Plaintiff could not stay focused on the conversation.  *Id.* at 5-7.

Based upon the statement reported by Ms. Sanchez, his interview with Plaintiff, and the recent history of school shootings nationally, Chief Mitchell decided to issue Plaintiff a "Notice of Trespass" because Chief Mitchell believed that Plaintiff was potentially a danger to the University community.  On November 28, 2015, after discussing the "machine gun" comment, the University Administration also decided to investigate.  Dean McNeil was asked to evaluate Plaintiff's behavior.  Dean McNeil ran into Plaintiff in the hallway later that day.  The details of the encounter are disputed, but Dean McNeil stated that he found Plaintiff's behavior concerning and reported as much to Provost Pardie.  Dean McNeil also asked Plaintiff to see Interim Human Resources Director Robert Lael.  It is unclear what was stated to Plaintiff about the purpose of the meeting with Director Lael.

At the meeting with Director Lael, Plaintiff was asked whether he needed any help.  Plaintiff responded that he did not.  The context of the conversation is unclear.  Defendant suggests it was about Plaintiff's behavior and Defendant's concerns.  Plaintiff suggests it was about his retirement situation.  Based upon the meeting with Director Lael and Dean McNeil's stated concerns, a meeting was scheduled for December 1, 2011 to address the situation with Plaintiff.  Before the meeting, the attending members of the administration, including Dean McNeil and Provost Pardie, decided to commence an "Evaluation of Ability to Work" process in regard to Plaintiff's mental state.  As a part of this process, Plaintiff was to be placed on Administrative Leave with pay and benefits, and the University was to conduct an evaluation about whether Plaintiff was still fit to perform his duties as Associate Professor.

At the December 1st meeting, the Administration informed Plaintiff of its decision to commence the evaluation and place him on administrative leave, and Chief Mitchell issued Plaintiff a Notice of Trespass and escorted Plaintiff from campus.  The specific details of what information the Administration provided Plaintiff at the meeting are disputed.  While on Administrative Leave, Plaintiff was

prohibited from teaching his classes or contacting his students for the remaining weeks of the term.  Further, the Notice of Trespass prohibited Plaintiff from entering University property, without permission and a police escort for one year.  Plaintiff was escorted to his office to collect his belongings by Chief Mitchell and Director Lael.  Plaintiff returned to campus a few times between December 1, 2011 and December 30, 2011 to collect belongings and fill out retirement paperwork.  Each time, he called Chief Mitchell prior to arriving at campus and was escorted by Mitchell while on campus.  Neither the University nor the University Police reported Plaintiff's situation to other law enforcement.

On December 30, 2011, Plaintiff's retirement became effective.  The "Evaluation of Ability to Work" process was never conducted.  In March of 2012, Plaintiff received an email from the University inviting him to a Retirement and Recognition Ceremony on April 27, 2012.  The active Notice of Trespass prevented Plaintiff from attending the ceremony.  Proceedings to bestow emeritus status upon Plaintiff were never initiated.  Emeritus status would have entitled Plaintiff to campus parking, a campus mail address, a campus email account, as well as the potential opportunity to teach

up to three classes per semester and maintain office space on campus.

Plaintiff claims that the actions of the Administration and the University police were discriminatory acts based on his Iranian heritage.  He claims that he was labeled a terrorist because of the machine gun comment and that a white professor who had made the same comment would not have been subject to the same response.  Between December 30, 2011 and January 2, 2012, Plaintiff claims to have consulted at least one attorney regarding the aforementioned events.  *See* Plaintiff's Response to Def. Renewed and Revised Mot. Summ. J. (d/e 40) at 28-29.

On January 2, 2013, Plaintiff signed a charge of discrimination, which the U.S. Equal Employment Opportunity Commission ("EEOC") received on January 8, 2013.  The charge requests that it be filed with both the EEOC and the Illinois Department of Human Rights, the applicable state agency.  The EEOC issued a Right to Sue letter on January 28, 2013, and Plaintiff subsequently filed a three-count Complaint in this Court (d/e 1).  In Count One of the Complaint, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq., by discriminating against him because of his race and
national origin, when Defendant issued Plaintiff a Notice of
Trespass banning him from campus, placed him on administrative
leave pending an evaluation of his mental fitness, and declined to
grant him the title of Professor Emeritus.

On June 24, 2013, Defendant filed a Motion to Dismiss
Plaintiff's Complaint (d/e 7).  On February 6, 2014, this Court
issued an Opinion dismissing Counts 2 and 3 of the Complaint and
identifying the University of Illinois Board of Trustees as the sole
defendant.  On February 16, 2015, Defendant filed a Motion for
Summary Judgment (d/e 25).  On February 19, 2015, Plaintiff filed
a Motion to Defer Consideration of Defendant's Motion for Summary
Judgment (d/e 27).  In a text order on February 27, 2015, United
States Magistrate Judge Tom Schanzle-Haskins granted
Defendant's motion to defer consideration to allow time for
discovery.  On August 17, 2015, Defendant filed a Renewed and
Revised Motion for Summary Judgment (d/e 37).  The Defendant's
Renewed and Revised Motion for Summary Judgment is GRANTED.
Plaintiff's Title VII claim is time-barred because he did not file a

charge with the EEOC within 300 days of an alleged adverse employment act, as required by the statute.

## II. LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P 56(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make showing sufficient to establish the existence of [an] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). At the time of summary judgment, a party is no longer permitted to rely only on its pleadings, but must make a showing that "if reduced to admissible evidence, would be sufficient to carry respondent's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-28 (1986) ("The last two sentences of Rule 56(e) were added…to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings."). When weighing summary judgment, the Court "view[s]

the record and draw[s] all reasonable inferences" in favor of the non-moving party. *Warsco v. Preferred Techincal Group*, 258 F.3d 557, 563 (7th Cir. 2001).

In order to bring a Title VII claim in federal court, a plaintiff must first file a charge with the EEOC "within the appropriate time period…set forth in 42 U.S.C. § 2000e-5(e)." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  If the plaintiff files the charge with an appropriate state or local agency, the time period is extended from 180 to 300 days. *Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot.*, 344 F.3d 680, 686-687 (7th Cir. 2003).

"Equitable tolling 'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citation omitted).  However, equitable tolling is "reserved for situations in which the claimant 'has made a good faith error (*e.g.* brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (citation omitted).  "A litigant is entitled to equitable tolling if he shows (1)

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 972 (7th Cir. 2011) (internal quotation omitted).

## ANALYSIS

In Defendant's Renewed and Revised Motion for Summary Judgment, Defendant argues that it is entitled to summary judgment on two grounds: (1) Plaintiff's claim is time-barred because Plaintiff did not file a charge with the EEOC within 300-days of alleged discrimination; and (2) Plaintiff has not met his burden to produce admissible evidence that Defendant discriminated against Plaintiff.  The Court finds that Plaintiff's claim is time-barred.

### A. Plaintiff's Title VII Claim is Time-barred.

In this Court's Opinion on Defendant's Motion to Dismiss, the Court did not dismiss Plaintiff's claim because the complaint did not "unambiguously show" that Plaintiff failed to file his EEOC charge within the proper time period.  Opinion (d/e 10) at III.3.B. The Court came to this conclusion because Title VII's EEOC reporting requirement is an affirmative defense, and "a plaintiff is

not expected to anticipate and address affirmative defenses in the

complaint." *Id.* at 16.  Further, a timeline was not clear from the

complaint.  *See id.*  At summary judgment, however, Plaintiff is no

longer permitted to rest on an ambiguity in his pleading.  Plaintiff

must now provide evidence sufficient to carry his burden of proof,

and therefore must show that there is still a genuine dispute as to

whether he suffered an adverse employment action within 300 days

of filing a charge with the EEOC.  *See Celotex Corp.*, 477 U.S. at

325-28 (1986) (holding that at summary judgment a party must rely

on more than references to its pleadings), *see also Lujan*, 497 U.S.

at 884 (1990) (Party must "establish the existence of [an] element

essential to that party's case, and on which that party will bear the

burden of proof at trial.").

Because Plaintiff filed with the Illinois Department of Human

Rights, he had 300 days after the "unlawful employment practice

occurred" to file his charge with the EEOC.  Opinion (d/e 10) at

III.3.A.  The statute of limitations begins to run once the plaintiff

learns of the allegedly discriminatory practice or decision.  *See*

*Begolli v. Home Depot U.S.A.*, 701 F.3d 1158, 1159 (7th Cir. 2012)

("[T]he 300-day period within which the employee is required by

Title VII to file an administrative complaint begins to run as soon he is informed of the allegedly unlawful employment practice."). Plaintiff filed his charge with the EEOC on January 2, 2013, which means that Plaintiff may only bring a claim for discriminatory acts or practices that he was made aware of on or after March 8, 2012. The only event relevant to Plaintiff's claim that took place after March 8, 2012 was the retirement ceremony that occurred on April 27, 2012. However, the alleged discriminatory decision preventing Plaintiff from attending the ceremony was the Notice of Trespass issued on December 1, 2011.

Plaintiff argues that the continuing violation doctrine brings his charge within the 300-day reporting period. Plaintiff relies on the 1992 case, *Selan v. Kiley*, in which the Seventh Circuit provided three theories under which the continuing violation doctrine could extend the 300-day filing window. 969 F.2d 560 (7th Cir. 1992). Plaintiff argues that his claim fits the first and third theories articulated in *Selan*. The first theory applies to decision-making processes that take place over a period of time, making it difficult to identify the exact date that the violation occurred. *Id.* at 565. The second theory applies to an employer's policy, which a plaintiff

Page 15 of 27

alleges is discriminatory.  *See id.*  The third theory applies to a series of acts that are so closely related that they cannot be considered "discrete" or "isolated," but rather they constitute one continuous violation.  *Id.*

Plaintiff first argues that his case is similar to a case involving hiring or promotion practices.  He argues that the process of denying his emeritus status is similar to the process of hiring or promotion where it is difficult to identify exactly when the violation occurred.  Plaintiff suggests that the denial of his emeritus status is a daily violation that continues even to this day.  *See* Plaintiff's Response to Def. Renewed and Revised Mot. Summ. J. (d/e 40) at 26 ("As each day goes by, Plaintiff continues to be denied the Emeritus and the benefits associated therewith.").  Although this theory is applicable to the decision-making process ultimately denying Plaintiff  Professor Emeritus status in this case, even applying the theory does not save Plaintiff's claim from being time-barred.

The first theory accounts for situations where an employer considers its options for a length of time before making a decision, such as the decision to hire or not hire an individual.  *See Selan*

969 F.2d at 565.  Although it is difficult to identify at what point in the decision-making process a discriminatory act may have taken place, the Court can still find a workable date by using the date of the end of the decision-making process.  *See id.* (In applying this theory, the *Selan* Court tolled the statute of limitations to when the transfer decision was communicated to the plaintiff).   Therefore, the first theory only places the 300 days at the end of the decision-making process.  But Plaintiff argues that the denial of emiritus benefits was a predictable act that had not yet occurred on December 1, 2015.  The Court agrees that the act had not yet occurred on December 1, 2015.  However, although it is difficult to identify precisely when the Administration made the decision not to grant emeritus status to Plaintiff, the process was clearly complete when Plaintiff retired on December 30, 2011 and he was not given the status or benefits of a Professor Emiritus.  Moreover, when using a date of December 30, 2011, the effective date of the decision's enforcement, for the occurrence of the alleged discriminatory act still leaves Plaintiff's claim outside the 300-day window.

Plaintiff argues that every day without benefits is a new violation. This argument suggests that employers who decide not to hire, promote, or grant a retirement status to an individual are forever subject to suit because the individual continues to be deprived of the position or title every day thereafter. If this Court were to make such a finding, the EEOC's inclusion of a 300-day filing window would be useless, as the time-limit could never begin to run.

Plaintiff also argues that his case fits the third theory in *Selan* because closely related acts can constitute a continuous violation. However, in 2002, the Supreme Court addressed this continuous violation theory in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (reviewing a Ninth Circuit case where the court applied a continuous violation theory). The Supreme Court held that a separate act that occurs outside of the 300-day EEOC reporting window is "not actionable," even if it is related to a later act that occurred within the 300-day window. *Id.* at 113 ("[D]iscrete acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."). Each individual act has its own time clock, and cannot be tied to acts that occur later on. *Id.*

("Each discrete act starts a new clock for filing charges alleging that act."). Since 2002, based on the Supreme Court's ruling in *Morgan*, the Seventh Circuit has held similarly. *See, e.g.*, *Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) (holding that, under *Morgan*, each failure of a city to promote a firefighter based on an allegedly discriminatory process was a discrete discriminatory action starting a new clock for filing a Title VII charge).

Plaintiff alleges that three discriminatory acts were committed by Defendant: (1) placing Plaintiff on administrative leave, (2) issuing Plaintiff a Notice of Trespass, and (3) denying Plaintiff Professor Emeritus status. However, these three discrete acts cannot be tied together through the continuous violation theory. *See Adams*, 742 F.3d at 729-30 (holding that because separate instances of failing to promote a firefighter were identifiable, discrete acts, each "discrete discriminatory act start[ed] a new clock for filing charges alleging that act") (internal quotations omitted).

Plaintiff *can*, in fact, bring claims alleging acts that are outside of the 300-day window if the claims are the result of an allegedly hostile work environment. *Id.* at 730. A hostile work environment is present when a workplace is "permeated with discriminatory

intimidation, ridicule and insult," resulting in an abusive

environment.  *Morgan*, 536 U.S. at 116 (internal quotations

omitted).  Hostile work environment claims are different in nature

than discrete acts because hostile work environment claims involve

repeated acts, which alone may not be actionable.  *Id.* at 115.

Therefore, a hostile work environment claim is timely as long as

"any act falls within the statutory time period."  *Id.*  However,

Plaintiff does not show, nor even allege, a hostile work environment.

Therefore, to bring a timely claim in this Court, the Plaintiff must

prove that an individual adverse employment act occurred on or

after March 8, 2012.  Plaintiff does not do so.

Even if *Selan* were controlling on the third theory and related

discrete acts could be linked, Plaintiff's claim is still time-barred

because he has not proven that *any* act occurred after March 8,

2012.  Plaintiff uses the same argument in regard to the third

theory that he did for theory one: that each day he is deprived of

emeritus status, Defendant violates anew.  Again, such an

interpretation would improperly render an employer perpetually

liable under Title VII to any individual who is denied an

employment position or title by that employer.  One of the intended

benefits of a statute of limitations is ensure a potential defendant has notice of when it may be liable for its actions.  *See Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975) ("[O]ne of the purposes of a statute of limitations is to afford a defendant fair notice of potential liability.").

Plaintiff makes an additional argument that his case is like *Bazemore v. Friday*, 478 U.S. 385 (1986 In *Bazemore*, the Supreme Court held that, in a case of compensation discrimination, each individual paycheck constitutes a new potential violation of Title VII.   478 U.S. 385, 395 (1986).  Therefore, under *Morgan*, a plaintiff can make a claim on any paycheck that was issued in the 300 days prior to the plaintiff's EEOC filing.  *See* U.S. at 112 (holding that each new potential violation starts a separate reporting window).  In 2009, Congress passed the Lilly Ledbetter Act, in response to the Supreme Court's holdings related to discriminatory pay claims under Title VII.  *See* 42 U.S.C. § 2000e–5(e)(3)(A).  Under the Ledbetter Act, each subsequent paycheck now is no longer its own separate claim, but rather each subsequent paycheck "resets" the statute of limitations on the original discriminatory decision. *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024-25 (7th Cir.

2011) ("The Act amends [Title VII] by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by the discriminatory decision.")

Plaintiff analogizes his claim to a compensation claim by arguing once again that he is deprived daily of the benefits bestowed upon Professors Emeriti.  If that were the case, then, like a subsequent paycheck, each day of deprivation would be a new violation and so would reset the 300-day clock.  However, again, this would defeat the purpose of a statute of limitations.  Further, all of the circuits that have ruled on this issue have held that the Ledbetter Act does not apply to situations like the present case. *See, e.g.*, *Almond v. Unified Sch. Dist. No. 501*, 665 F. 3d 1174, 1181 (10th Cir. 2011) (holding that "hiring, firing, promotion, demotion, and transfer decisions, though often touching on pay, should and do accrue" as soon as the employee is aware of the decision), *Niwayama v. Texas Tech Univ.*, 590 Fed.Appx 351, 355-56 (5th Cir. 2014) (holding that the Ledbetter Act does not apply to the denial of tenure), *Davis v. Bombardier*, 794 F.3d 266, 269 (2d. Cir. 2015) (holding that the Ledbetter Act does not apply to a demotion). Unlike the further issuance of paychecks based on a discriminatory

compensation system, which are subsequent affirmative discriminatory acts taken by the employer, the denial of emeritus status, though related to compensation, is a singular, discrete action.  Therefore, the 300-day time-limit does not restart each day that Plaintiff is deprived of Professor Emiritus status.

Defendant's denial of Plaintiff's emeritus status was a single adverse act that occurred when Plaintiff retired on December 30, 2011 without being given the privileges of a Professor Emeritus. Further, Defendant's issuance of a Notice of Trespass was a single adverse act that occurred on December 1, 2011.  Even further, Defendant's placement of Plaintiff on Administrative leave, denying Plaintiff the ability to continue performing his professorial responsibilities was a single act that occurred on December 1, 2011.  None of these acts occurred within 300 days prior of Plaintiff's filing his charge with the EEOC.  Therefore, Plaintiff's claim in this Court is time-barred.

**B.  Equitable Tolling Does Not Apply.**

Plaintiff argues that even if his claim is time-barred, this Court should use its equitable power to toll the 300-day reporting period. In *Morgan*, the Supreme Court explicitly stated that "this time

period for filing a charge is subject to equitable doctrines such as tolling or estoppel." 536 U.S. at 113. However, equitable tolling only applies when a plaintiff, despite "all due diligence" is prevented from obtaining "vital" information and therefore is unable to file a claim within the statute of limitations. *Hentosh*, 167 F.3d at 1174. To prove entitlement to equitable tolling, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Plaintiff does not provide evidence sufficient to meet that burden.

Plaintiff rests his case for equitable tolling on a single excerpt from his deposition. At the end of Plaintiff's deposition, defense counsel asked Plaintiff if he filed his claim more than 300 days after his final day of employment. Def. Renewed and Revised Mot. Summ. J. (d/e 40-10) at 22. In response to that question, Plaintiff stated, "Sir, we have to back a little bit. When this incident happened, I went to the Counselor, a gentleman by the name of Howard Feldman, a lawyer. I went to him..." *Id.* After Plaintiff's counsel admonished him about attorney-client privilege in regard to Mr. Feldman, Plaintiff continued, "That 300 days I went to him said

as long as this, we are investigating, we are working your case that doesn't matter.  I was advised that way."  *Id.* at 22-23.  Plaintiff additionally stated that he "was not aware of that one, the time lapse…"  *Id.*

Beyond this brief, ambiguous discussion, Plaintiff provides no evidence of his reasonable diligence or the extraordinary circumstances that could provide justification for the Court to use its equitable power.  Plaintiff's deposition concluded shortly after the above exchange, yet Plaintiff's counsel asked no follow-up questions about Plaintiff's actions in pursuing his Title VII claim.  Additionally, Plaintiff has provided no documents, declarations, or affidavits concerning his efforts to pursue this claim.

The evidence provided by Plaintiff does not meet the burden necessary to entitle him to equitable tolling.  Plaintiff's lack of knowledge about the 300-day time period does not constitute an extraordinary circumstance.  *See*, *Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2013) ("Lack of familiarity with the law…is not a circumstance that justifies equitable tolling.")  Further, the circumstances with Mr. Feldman, partially described by Plaintiff, whether erroneous advice or Plaintiff's misunderstanding, do not

constitute extraordinary circumstances.  Even though Plaintiff did not discover the existence of the 300-day deadline, Plaintiff clearly could have discovered the deadline through due diligence.  Plaintiff admits he was pursuing an employment discrimination claim. Therefore, there were no extraordinary circumstances preventing him from making his claim.  Either individually or through an attorney, Plaintiff is required to perform due diligence to identify filing deadlines.  *See id.* ("Taylor either misunderstood his attorney's advice, or his attorney gave him bad advice. Under either scenario...[the party] did not confirm the date....  That lack of action does not show reasonable diligence and it does not show that extraordinary circumstances actually prevented [the party] from filing."  Even "negligence" on the part of a previous attorney is "not extraordinary by any means".  *Id.* (internal quotation omitted).

Because Plaintiff has not provided evidence that, despite due diligence, extraordinary circumstances prevented him from filing his charge on time, this Court will not use its equitable power to toll the filing period and allow Plaintiff's claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Renewed and Revised Motion for Summary Judgment (d/e 37). This case is CLOSED.

IT IS SO ORDERED.

ENTER: November 28, 2015

FOR THE COURT:

_____ s/ Sue E. Myerscough
SUE E. MYERSCOUGH
United States District Judge